IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jeffrey Wan, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br><br><br>DraftKings Inc.,<br><br>        Defendant. | Civil Action No. 24-cv-09557 |

MEMORANDUM OF LAW IN SUPPORT OF
DRAFTKINGS INC.'S MOTION TO DISMISS

SKARZYNSKI MARICK & BLACK LLP
  James T. Sandnes
One Battery Park Plaza, 32nd Floor
New York, NY 10004
Telephone: (212) 820-7700
jsandnes@skarzynski.com

COBLENTZ PATCH DUFFY & BASS LLP
    Richard R. Patch (pro hac vice forthcoming)
    Scott C. Hall (pro hac vice forthcoming)
    Mari S. Clifford (pro hac vice forthcoming)
One Montgomery Street, Suite 3000
San Francisco, CA 94104-5500
Telephone: (415) 391-4800
ef-rrp@cpdb.com
ef-sch@cpdb.com
ef-msc@cpdb.com

February 21, 2025

**TABLE OF CONTENTS**

<u>**Page**</u>

INTRODUCTION ................................................................................................................... 1

FACTUAL ALLEGATIONS .................................................................................................. 4

LEGAL STANDARD ............................................................................................................ 5

THE VIDEO PRIVACY PROTECTION ACT ...................................................................... 6

ARGUMENT .......................................................................................................................... 7

    I.      Plaintiff Fails To State A Claim Under The VPPA. ............................................. 7

            A.      Plaintiff Fails To Identify The Content That He Allegedly Watched On DK Casino. .................................................................................. 7

            B.      DraftKings Is Not A Video Tape Service Provider Because The Audiovisual Content Identified In The Complaint Is Peripheral To Its Business. ............................................................................................ 10

            C.      The Casino Game Content Identified In The Complaint Is Not Covered By the VPPA Because It Does Not Constitute "Prerecorded Video Cassette Tapes Or Similar Audiovisual Materials." ...................................................................................................... 13

            D.      Plaintiff Fails To Allege That Personally Identifying Information Was Actually Disclosed. ....................................................................... 16

            E.      Plaintiff Fails To Show That Specific Video Content Was Disclosed from the Facebook Pixel. ..................................................................... 19

    II.     The Complaint Should Be Dismissed With Prejudice. ....................................... 20

CONCLUSION ..................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aldana v. GameStop, Inc.*,
  No. 22-CV-7063-LTS, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024), *motion to certify appeal denied,* No. 22-CV-7063-LTS-VF, 2024 WL 3104345 (S.D.N.Y. June 24, 2024)..... 2, 14, 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................. 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................. 5

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
  No. 17-CV-04570 (LAK) (KHP), 2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017) ............... 16

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
  No. 17-CV-4570 (LAK), 2017 WL 3726050 (S.D.N.Y. Aug. 28, 2017)............................ 17

*Cantu v. Sunrun Inc.*,
  No. 23-CV-974-JO-AHG, 2023 WL 11795670 (S.D. Cal. Nov. 22, 2023) ......................... 20

*Cantu v. Tapestry, Inc.*,
  697 F. Supp. 3d 989 (S.D. Cal. 2023) ............................................................ 10, 11, 12, 13

*Carroll v. General Mills, Inc.*,
  No. CV 23-1746 DSF, 2023 WL 4361093 (C.D. Cal. June 26, 2023).............. 10, 11, 12, 13

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) .......................................................................................... 12

*Galiano v. Fidelity Nat'l Title Ins. Co.*,
  684 F.3d 309 (2d Cir. 2012) .................................................................................. 8, 10

*Ghanaat v. Numerade Labs*,
  689 F. Supp. 3d 714 (N.D. Cal. 2023)............................................................................ 18

*Heerde v. Learfield Commc'ns, LLC*,
  741 F. Supp. 3d 849 (C.D. Cal. 2024)............................................................................ 18

*Hernandez v. Jostens, Inc.*,
  No. 2:23-CV-05227-HDV-RAO, 2024 WL 1135165 (C.D. Cal. Feb. 7, 2024).................. 11

*Koch v. Christie's Int'l PLC*,
  699 F.3d 141 (2d Cir. 2012) ........................................................................................... 5

*Louth v. NFL Enters. LLC,*
  No. 21-405, 2022 WL 4130866 (N.D. Cal. 2022) ....................................................... 14, 15

*Martin v. Meredith Corp.,*
  657 F. Supp. 3d 277 (S.D.N.Y. 2023) .................................................................. 7, 10, 20

*Mendoza v. Caesars Entm't, Inc.,*
  No. 23-CV-03591, 2024 WL 2316544 (D. N.J. May 22, 2024) ................................. *passim*

*In re Nickelodeon Consumer Privacy Litig.,*
  827 F.3d 262 (3d Cir. 2016) ................................................................................ 17, 18

*Osheske v. Silver Cinemas Acquisition Co.,*
  700 F. Supp. 3d 921 (C.D. Cal. 2023) ............................................................................ 15

*Rodriguez v. Hershey Co.,*
  No. 23-CV-398-L-DEB, 2023 WL 6798506 (S.D. Cal. Oct. 12, 2023) ............................ 11

*Salazar v. NBA,*
  118 F.4th 533 (2d Cir. 2024) .................................................................................. 12, 13

*Smith v. Trinity Broad. of Texas, Inc.,*
  No. 8:24-CV-01046-JVS-ADS, 2024 WL 4394557 (C.D. Cal. Sept. 27, 2024) ................. 18

*Solomon v. Flipps Media, Inc.,*
  No. 22-cv-05508 (JMA), 2023 WL 6390055 (E.D.N.Y. 2023), *appeal filed,* No. 23- 7597 (2d
  Cir. Nov. 1, 2023) ...................................................................................................... 17

*Stark v. Patreon, Inc.,*
  635 F. Supp. 3d 841 (N.D. Cal. 2022) ............................................................................ 12

*Walker v. Meta Platforms, Inc.,*
  No. 22-CV-02442-JST, 2023 WL 3607282 (N.D. Cal. Mar. 3, 2023) ............................... 14

*Wilson v. Triller, Inc.,*
  598 F. Supp. 3d 82 (S.D.N.Y. 2022) ............................................................................... 16

**Statutes & Rules**

18 U.S.C.
  § 2710(a)(1) ................................................................................................................. 6
  § 2710(a)(3) ................................................................................................... 3, 6, 7, 19
  § 2710(a)(4) ................................................................................................................. 6
  § 2710(b) ..................................................................................................................... 6
  §2710(b)(1) ................................................................................................................... 3

**Other Authorities**

https://casino.draftkings.com/how-to-play-blackjack.................................................................. 20

S. REP. 100-599 ......................................................................................................................... 20

S. REP. 100-599 (1988)............................................................................................................... 6

S. REP. 100-599 (1988)............................................................................................................... 6

*Timeline of Computer History: 1988*, COMPUTER HISTORY MUSEUM,
    https://www.computerhistory.org/timeline/1988/ (last visited Feb. 6, 2025) ...................... 13

*Video Game History Timeline*, THE STRONG NAT. MUSEUM OF PLAY,
    https://www.museumofplay.org/video-game-history-timeline/ (last visited Feb. 6, 2025) ... 13

## INTRODUCTION

Plaintiff Jeffrey Wan's ("Plaintiff") Complaint against DraftKings Inc. ("DraftKings") is a fundamentally flawed attempt to expand the Video Privacy Protection Act ("VPPA") far beyond its intended scope. The VPPA was enacted in 1988 to protect consumers from unauthorized disclosures that identify persons as having requested or obtained specific video materials or services from a video tape services provider, *not* to regulate interactive online casino platforms. Yet Plaintiff wrongfully attempts to expand the VPPA by alleging that DraftKings violated the statute by allegedly using a Facebook pixel (the "Pixel") or other website tracking technologies in connection with the audiovisual materials offered on its online casino platform, DraftKings Casino ("DK Casino"). Plaintiff's tortured reading of the statute cannot mask the fact that DraftKings is plainly not a "video tape service provider" as contemplated by the statute, and the audiovisual materials offered on DK Casino are "live" and not prerecorded. Additionally, Plaintiff has not even alleged what video content he allegedly viewed, or whether any specific video or personal identifying information was allegedly transferred to Facebook. The Court should reject this attempt to fundamentally alter the intended reach of a decades-old statute that has no application to DraftKings' platform.

To be clear, this case is *not* about whether DraftKings violated the VPPA by allowing the Pixel to collect information about what casino *games* Plaintiff and other customers were playing. Plaintiff makes no such claim because the statute and case law would not support it. Indeed, no court has applied the VPPA to online gaming platforms like DK Casino, which are dynamic and interactive and fall outside of what courts have defined as "prerecorded" audiovisual materials under the VPPA. In fact, a plaintiff's nearly identical VPPA claim arising from online casino games was recently rejected in *Mendoza v. Caesars Entm't, Inc.*, No. 23-CV-03591, 2024 WL 2316544,

1

at *3 (D. N.J. May 22, 2024) ("[I]n arguing that the Act applies to online casino games—a medium far attenuated from the video cassette tapes that motivated the Act's original passage—Plaintiff urges an interpretation of the VPPA that stretches these flexible terms too far.").  The *only* reported decision that has addressed whether the VPPA's scope should be extended to cover video games ultimately held that the video game content at issue was *not* subject to the VPPA, and held that *only* the independent prerecorded movie scenes included within certain **physical** copies of video games potentially fell under the VPPA.[1]  Needless to say, DK Casino does not offer physical copies of its games, nor does it provide independent prerecorded movie scenes within its offerings.

Plaintiff's Complaint attempts to massively exceed the scope of the statute and case law by asserting that, although the alleged disclosure of which games Plaintiff allegedly played on DK Casino is definitively outside the scope of the VPPA, the alleged disclosure of animations in those games or the *separate*, related tutorial content on how to play those games, is somehow a violation of the statute.  This overexpansive and entirely novel interpretation of the VPPA is meritless and contrary to both the letter and spirit of the VPPA.

The video content identified in the Complaint is not subject to the VPPA because, among other reasons, it is not the type of audiovisual material that is "similar" to prerecorded video cassette tapes, as required by the statute.  Notably, Plaintiff does not identify the video content that he actually viewed on DraftKings' website. Instead, the Complaint broadly refers to content that includes: (1) animations that are part of dynamic, interactive online casino games, or (2)

---

[1] *Aldana v. GameStop, Inc.*, No. 22-CV-7063-LTS, 2024 WL 708589, at *4 (S.D.N.Y. Feb. 21, 2024), *motion to certify appeal denied,* No. 22-CV-7063-LTS-VF, 2024 WL 3104345 (S.D.N.Y. June 24, 2024) (noting that no other court "has considered whether the [VPPA] statutory language covers video games" and concluding that because plaintiff alleged that defendant "sells video games that are typically manufactured using 100GB Blu-ray discs," that was sufficient to plausibly plead that the audiovisual content at issue was "prerecorded.").

instructional content associated with "How to Play" those casino games, provided among other non-video instructions and information. Even assuming Plaintiff watched this content – and it is utterly unclear from his Complaint whether he did – these are not movies, rentals, or purchasable media. DraftKings is not "engaged in the business" of selling, renting, or delivering these animations or tutorial content. Customers do not create a DK Casino account or otherwise navigate to the site to watch these animations or tutorials; instead, they come for the entertainment of placing wagers in casino games. This peripheral content falls outside the VPPA's scope and does not remotely transform DraftKings into a "video tape service provider," engaged in the business of the rental, sale, or delivery of prerecorded video cassette tapes or similar audio-visual materials.

Additionally, Plaintiff fails to sufficiently allege that DraftKings disclosed users' personally identifiable information ("PII") to Facebook via the alleged tracking tools. First, the "prerecorded" audiovisual content cited in the Complaint is not identified in a way that ties it to a specific user, as the VPPA requires, so it by definition is not PII.[2] Second, even if that information did qualify as PII, Plaintiff fails to allege circumstances that demonstrate that his PII was disclosed to Facebook, including failing to allege that he was using a browser or browser settings that permitted the Facebook Pixel or other tracking technologies.

While the VPPA's scope has expanded to arguably include digital streaming platforms deemed analogous to those covered by the original statute, such as Netflix, Plaintiff's claim is a legally untenable overreach. The VPPA does not, and cannot, extend to DK Casino because its interactive casino platform and tutorial pages do not involve the rental, sale, or delivery of prerecorded audiovisual materials, making Plaintiff's attempt to shoehorn DK Casino into the

---

[2] "Personally identifiable information" (PII), within the meaning of prohibition on a video tape service provider's disclosure of PII under the VPPA, is information which itself identifies both a particular person and the specific video materials he accessed. 18 U.S.C. § 2710(a)(3), (b)(1).

statute's framework both unfounded and inconsistent with the VPPA's purpose.  The Complaint should be dismissed with prejudice.

## FACTUAL ALLEGATIONS[3]

According to the Complaint, Plaintiff, a New York resident, used DraftKings' website and applications, including DK Casino, to access casino games that he claims contain prerecorded videos covered by the VPPA.  Compl. ¶¶ 6-7.  Specifically, Plaintiff alleges two categories of audiovisual content that purportedly violate the VPPA: (1) a "catalog" of casino games containing prerecorded audiovisual clips (though he does not identify or describe in the Complaint any specific prerecorded clips that he watched); and (2) instructional content pertaining to various casino games (for which Plaintiff provides screenshots of a single example related to Blackjack, which he does not allege to have seen).  Compl. ¶¶ 21, 34.

Plaintiff alleges that DraftKings is a "video tape service provider" because it purportedly is in the "business of" selling and delivering audiovisual materials. *See id.* ¶ 50.  Plaintiff makes conclusory allegations that DraftKings violated the VPPA by knowingly and intentionally disclosing its users' PII—including a record of "videos" viewed by the user—to Facebook and other unauthorized third parties through the use of certain Facebook Business Tools or other tracking technologies, including a Pixel, which enabled the collection of information such as a user's Facebook ID and "names of specific video games and other audiovisual content." *Id.* ¶¶ 2, 23-29, 33.  Plaintiff does not allege, however, that he did not have any tools or settings enabled on his browser that would block such tracking technologies.  Although Plaintiff alleges that "[a]ny ordinary person who comes into possession of a Facebook ID can easily use that information to identify a particular individual and their corresponding Facebook profile" and to access sensitive

---

[3] As required, and for the purposes of this Motion only, DraftKings relies on facts taken from the Complaint, without accepting their truth.

information, he does not allege that his Facebook profile was publicly viewable and accessible in a way that would allow an ordinary person to obtain this information. *Id*. ¶ 32.

Plaintiff seeks to represent a nationwide class of all persons in the United States who, during the maximum period of time permitted by law, used DraftKings' website or applications to view or request prerecorded casino games or videos using their mobile or computer browsers. *Id*. ¶ 39.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plaintiff cannot rely on a "threadbare" recitation of the elements of a cause of action, but must allege facts sufficient to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[D]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. A complaint is properly dismissed where, as a matter of law, the allegations in the complaint, however true, could not raise a claim of entitlement to relief. *Twombly*, 550 U.S. at 558. In reviewing the plausibility of a complaint on a motion to dismiss, the court must assume all well-pleaded facts to be true, drawing all reasonable inferences in favor of Plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

5

## THE VIDEO PRIVACY PROTECTION ACT

In 1988, Congress enacted the VPPA in response to a tabloid scandal in which a newspaper exposed Supreme Court nominee Robert Bork's video rental history, revealing his personal and political preferences. *See* S. REP. 100-599, at 5-6 (1988). The VPPA was designed to protect the privacy interests of consumers who rent, purchase, or view prerecorded video materials from unauthorized disclosures by video stores. *See id.*, at 5. The VPPA reflected Congress's concern that such stores, which collect and maintain sensitive personal information about their customers' viewing preferences, could misuse or divulge that information to third parties without the customers' consent or knowledge. *See id.* at 6-7. To that end, the VPPA provides that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person[.]" 18 U.S.C. § 2710(b).

The VPPA's definitions of several key terms are essential to understanding the proper scope of the statute. "Video tape service provider" under the VPPA constitutes "any person engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." *Id.* § 2710(a)(4). "Similar audio visual materials" means "laser discs, open-reel movies, or CDI technology." S. REP. 100-599, at 12 (1988). The statute defines a "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id.* § 2710(a)(1). "Personally identifiable information" is defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." *Id.* § 2710(a)(3). None of these definitions are applicable to DraftKings, its casino games, its customers, or the information alleged to have been obtained and transferred.

6

## ARGUMENT

### I.    Plaintiff Fails To State A Claim Under The VPPA.

Plaintiff fails to state a claim under the VPPA upon which relief can be granted.  To state a claim under the VPPA, a "plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any consumer,' … (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by another part of the statute."  *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023).  Plaintiff's Complaint fails to state a claim because, among other reasons, it does not even allege the most basic facts: the identity of the specific audiovisual material that Plaintiff purportedly watched on DK Casino, or the specific audiovisual material and/or PII alleged to have been obtained and transferred.  *See* 18 U.S.C. § 2710(a)(3) (defining PII as information identifying a person as having requested or obtained specific video materials or services).  Moreover, even accepting the Complaint's allegations as true, case law and well-settled principles of statutory interpretation make clear that the games offered on DK Casino do not render DraftKings a "video tape service provider" within the meaning of the statute because the alleged video content is peripheral to its business. Simply put, the content that Plaintiff alleges is featured on DK Casino is not the type of material covered by the VPPA, and Plaintiff does not plausibly allege that DraftKings shared information qualifying as PII with any third party.[4]

### A.    Plaintiff Fails To Identify The Content That He Allegedly Watched On DK Casino.

Plaintiff's VPPA claim against DraftKings is entirely based on his allegation that he played "games, which contained prerecorded audiovisual content and watched prerecorded videos from

---

[4] Though at this time Defendant is not briefing whether the disclosure was made knowingly, with consent, or authorized by another part of the statute, it reserves its right to do so at a later time, and the exclusion of the latter from this Rule 12(b)(6) Motion is not a waiver of those arguments.

Defendant's Website." Compl. ¶¶ 6-7. As support, the Complaint makes vague allegations about how the Pixel collects information and provides four screenshots of content purporting to be from DK Casino's website. Compl. ¶¶ 26-32, 34. These allegations are insufficient to adequately plead a VPPA violation for numerous reasons.

First, the only references to DK Casino content in the Complaint are not even alleged to be videos. *See* Compl., ¶34, Figures 1-4. Plaintiff alleges only that these screenshots represent "a video *game* on Defendant's website" or "a *game* on Defendant's Website." *Id.* (emphases added). The Complaint is devoid of any allegations that the content depicted in Figures 1-4 is, in fact, audiovisual content subject to the VPPA, or even that Figures 1-4 represent games that contain prerecorded videos.[5]

Second, even if the Complaint included allegations that Figures 1-4 contained prerecorded videos—which it does not—Plaintiff never identifies what games or videos *he* purportedly played or watched. Instead, Plaintiff broadly points at the "plethora of audio visual content" offered by DraftKings, including "a catalog of games" and "prerecorded videos pertaining to various casino games," and claims that "ordinary consumers see" Figures 1 through 4 "as they use the Website." Compl. ¶¶ 21, 34. Yet, Plaintiff entirely fails to plead any factual allegations that these screenshots depict the games or content he actually watched; he only makes a conclusory allegation that they reflect, *on information and belief*, what "ordinary customers" see on their screens. Compl. at p. 1, ¶¶ 33-34. Conclusory and speculative assertions based upon information and belief are wholly insufficient to state a claim upon which relief can be granted. *See Galiano v. Fidelity Nat'l Title Ins. Co.*, 684 F.3d 309, 314–15 (2d Cir. 2012) (affirming dismissal where the complaint failed to

---

[5] Notably, Plaintiff does not even accurately describe Figures 3 and 4, as each depicts a "how to" tutorial webpage and not a "video game on Defendant's Website" as alleged.

allege specific facts supporting the alleged misconduct, instead relying on conclusory and speculative assertions). Plaintiff's utter failure to identify any specific video content that he actually accessed or viewed is fatal to his claim because the Court, even in the light most favorable to Plaintiff, cannot reasonably evaluate that content to determine whether it is covered by the VPPA, and whether Plaintiff therefore has a viable claim. *See infra* Section I.C.

Even assuming *arguendo* that Plaintiff adequately pleads that he viewed the content shown in the screenshots included in the Complaint (Figures 1 though 4) – and he does not – those screenshots only purport to show images associated with interactive casino games and tutorial pages, not prerecorded video clips or content covered by the VPPA. Content associated with online, interactive casino games is decidedly *not* covered by the VPPA unless Plaintiff can demonstrate how the types of prerecorded audiovisual materials covered by the statute are involved in the operation of those games. *See Mendoza,* 2024 WL 2316544, at *2-3 (finding that plaintiff failed to allege that defendant's online casino games were sufficiently akin to video tapes for the VPPA to apply and dismissing claim where no prerecorded video content was identified). In fact, the court in *Mendoza* dismissed a similar VPPA claim brought by a user of an online casino website, finding that the plaintiff failed to allege that the defendant (a hotel and casino entertainment company) was a video tape service provider. *See id.* at *2-3.

Here, in an apparent attempt to circumvent the holding in *Mendoza*, Plaintiff makes overly broad and conclusory allegations that he "watched prerecorded videos on Defendant's Website within the last two years" and "play[ed] games, which contained prerecorded audiovisual content and watched prerecorded videos from Defendant's Website." Compl. ¶¶ 6-7. However, Plaintiff strategically excluded allegations identifying the prerecorded videos or games he allegedly saw and provided absolutely no details or information about which specific video content he watched. The

Complaint should be dismissed based on these vague and conclusory allegations alone. *Galiano*, 684 F.3d at 314–15; *see also Martin*, 657 F. Supp. 3d at 285 (dismissing the complaint where plaintiff primarily relied on generalized allegations).

**B.** **DraftKings Is Not A Video Tape Service Provider Because The Audiovisual Content Identified In The Complaint Is Peripheral To Its Business.**

Even if Plaintiff had pled that he viewed specific prerecorded audiovisual content, his VPPA claim would still fail. Plaintiff's VPPA claim, like all VPPA claims, hinges on the Court finding that DraftKings is a video tape service provider, which requires that it is engaged in the business of providing audiovisual content in the form of its online casino platform. However, Plaintiff's position conflates incidental audiovisual material with qualifying content under the VPPA. Plaintiff does not allege, and cannot allege, that DraftKings' *casino games* – its core business on its DK Casino platform – violate the statute. Instead, Plaintiff makes broad, conclusory claims that ancillary elements, such as minor in-game animations and separate, instructional tutorials, somehow transform DraftKings into a video tape service provider. Plaintiff has not alleged *how* these ancillary elements are more than peripheral to DraftKings' business, and his claim thus fails as a matter of law.

Courts have made clear that the VPPA "does not cover every company that merely delivers audiovisual materials ancillary to its business." *Carroll v. General Mills, Inc*., No. CV 23-1746 DSF (MRWX), 2023 WL 4361093, at *3 (C.D. Cal. June 26, 2023). Rather, to be "engaged in the business" under the VPPA "connotes a particular field of endeavor" or a "focus of the defendant's work." *Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989, 993 (S.D. Cal. 2023) (internal citations omitted). The court in *Cantu* found that "it is not enough that the defendant is engaged in the delivery of video content "peripherally or passively." *Id.* at 993. In that case, the court held that, for example, "hosting and creating prerecorded videos for the purpose of marketing its products

does not suffice to plausibly allege Defendant is a video tape service provider." *Id.* at 993; *see also Carroll*, 2023 WL 4361093, at *3 (dismissing VPPA claim based on operation of website that featured video clips related to its primary business of food manufacturing, such as recipes, food, and cooking content).

Courts have consistently rejected VPPA claims against businesses that merely use audiovisual content to market, promote, or facilitate the sale of their primary products or services. Where prerecorded videos are not the product itself, their incidental use does not transform a company into a video tape service provider under the statute. *See, e.g.*, *Rodriguez v. Hershey Co.*, No. *23*-CV-398-L-DEB, 2023 WL 6798506, at *2 (S.D. Cal. Oct. 12, 2023) (holding that a company using videos for marketing purposes is not a "video tape service provider" under the VPPA where the delivery of audiovisual content was ancillary to its business, dismissing the claim without leave to amend); *Hernandez v. Jostens, Inc.*, No. 2:23-CV-05227-HDV-RAO, 2024 WL 1135165, at *2 (C.D. Cal. Feb. 7, 2024) (holding that prerecorded videos on a company's website used to promote its products did not render it "engaged in the business" of delivering video content under the VPPA, noting that the videos were peripheral to its primary business of selling yearbooks and class pictures). The court in *Hernandez* further emphasized that even significant expenditures to produce and host video content do not establish that video delivery is central to a company's business, dismissing the claim with prejudice. *Hernandez*, 2024 WL 1135165, at 2.

The same reasoning should apply here to reject Plaintiff's VPPA claim because, just as marketing materials support a business's primary product or service – but are not, themselves, the product or service – DraftKings' tutorial content serves merely to facilitate DraftKings' online casino operations. In the same way that promotional videos help attract customers without transforming a company into a video tape service provider, tutorial content aids user engagement

but remains incidental to DraftKings' core offering of interactive online casino games. The Complaint itself concedes this point as Plaintiff alleges DraftKings' business as "operat[ing] an online casino through its Website." Compl. ¶ 21. Any tutorial or instructional videos on DK Casino or animations within its interactive casino games are clearly peripheral as they exist solely to support gameplay and serve no independent function as standalone content. *See id.*; *Cantu*, 697 F. Supp. 3d at 994. Courts in similar circumstances have consistently held that businesses do not qualify as video tape service providers when video content is incidental rather than central to their operations. *See, e.g.*, *id.* at 993; *Carroll*, 2023 WL 4361093, at *3. Any attempt by Plaintiff to expand the scope of the VPPA to cover DK Casino is unsupported by the statute's text, history, and case law. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (declining to read statute "to cover circumstances so different from the ones that motivated its passage."); *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 851 (N.D. Cal. 2022) (declining to extend the VPPA to live broadcasts). DraftKings' videos are incidental to its online casino business. Neither business centers its operations around the rental, sale, or delivery of prerecorded audiovisual materials, which is the cornerstone of the VPPA's application.

Additionally, Plaintiff cannot save his claim by relying on *Salazar v. NBA,* where the NBA was held to be a "video tape service provider" because it offered *standalone* prerecorded video content on its website. *See Salazar v. NBA*, 118 F.4th 533, 537 (2d Cir. 2024). The court's decision in *Salazar* was based on the NBA's direct offering of prerecorded on-demand video content to consumers through its website and newsletter. *Id.* at 536-37. In other words, the NBA offered prerecorded video to customers *specifically seeking out* said video. Unlike the NBA, DraftKings does not sell, rent, or deliver prerecorded video content on DK Casino, and through DK Casino it operates an interactive gaming platform, where audiovisual elements—such as in-game animations

and instructional content—are incidental to the gaming experience, and are not the product itself. *See Cantu*, 697 F. Supp. 3d at 993; *Carroll*, 2023 WL 4361093, at *3. *Salazar* is thus readily distinguishable and does not alter the conclusion that DraftKings is not a video tape service provider under the VPPA.

### C.   The Casino Game Content Identified In The Complaint Is Not Covered By the VPPA Because It Does Not Constitute "Prerecorded Video Cassette Tapes Or Similar Audiovisual Materials."

Plaintiff's attempt to twist the plain language of the VPPA to encompass the games offered on DK Casino is meritless. Even taking the pleadings in the light most favorable to the Plaintiffs, nothing in the Complaint plausibly suggests that DraftKings offers "prerecorded video cassette tapes," or any "similar audiovisual materials," as required to fall under the VPPA. DK Casino offers live, interactive casino games, none of which are covered by the VPPA. Plaintiff's interpretation of the statute is a clear attempt to create a claim that was never intended by the legislature, and it should be soundly rejected.

The legislative history of the VPPA clearly demonstrates that Congress did not intend for the statute to apply to modern digital gaming platforms, such as DraftKings, that offer online gaming and contests, live streaming of sports events, or other interactive content that is not analogous to "prerecorded video cassette tapes or similar audio-visual materials, such as laser discs, open-reel movies, or CDI technology."[6]  Accordingly, there is only one case which even

---

[6] Indeed, if Congress intended for the VPPA to apply to gaming platforms, it would have enumerated this, seeing as video and computer games were readily available in 1988. That year saw the release of several prominent games such as John Madden Football, which introduced realistic football simulations and became a long-standing franchise. *See Video Game History Timeline*, THE STRONG NAT. MUSEUM OF PLAY, https://www.museumofplay.org/video-game-history-timeline/ (last visited Feb. 6, 2025). Additionally, the demand for enhanced gaming experiences led to the release of the first SoundBlaster sound card by Creative Labs, which became the industry's top-selling expansion card and revolutionized PC audio. *See Timeline of Computer History: 1988*, COMPUTER HISTORY MUSEUM, https://www.computerhistory.org/timeline/1988/ (last visited Feb. 6, 2025). Given the prominence of video and computer games at the time, Congress's choice to

peripherally applied the VPPA to video games, and it is in an entirely distinguishable context of the sale of *physical* copies of video games containing movie scenes or "cut clips" within them. *Aldana v. GameStop, Inc.*, No. 22-CV-7063-LTS, 2024 WL 708589, at *2-3 (S.D.N.Y. Feb. 21, 2024), *motion to certify appeal denied,* No. 22-CV-7063-LTS-VF, 2024 WL 3104345 (S.D.N.Y. June 24, 2024). The court in *Aldana* held that those video games and their cutscenes could be analogized to the physical video cassettes outlined in the VPPA. But that line of reasoning – and indeed, *Aldana* itself – has no bearing on the type of online, interactive casino games and associated content that DraftKings offers on DK Casino.

Plaintiff obviously does not, and cannot, allege that DraftKings sells, rents, or delivers actual prerecorded video cassette tapes. Thus, the viability of his claim hinges on whether the alleged content offered on DK Casino constitutes "similar audiovisual materials." Such audiovisual material must share characteristics with "prerecorded video cassette tapes" to be covered by the VPPA. *See Walker v. Meta Platforms, Inc.*, No. 22-CV-02442-JST, 2023 WL 3607282, at *6 (N.D. Cal. Mar. 3, 2023) (holding that "'similar audiovisual materials' must be read in a manner that gives meaning to, and that does not render superfluous, the word 'prerecorded' in the preceding phrase"). In evaluating this question, courts have noted that prerecorded video cassette tapes: (1) are not live or interactive content; and (2) are physical or electronic copies that can be possessed, transferred, or stored by the consumer. *See Mendoza*, 2024 WL 2316544, at *2-3 (holding that audiovisual materials must include some prerecorded video content to trigger application of the VPPA); *Louth v. NFL Enters. LLC*, No. 21-405, 2022 WL 4130866, at *4 (N.D. Cal. 2022) (holding that live sports broadcasts are not akin to videotapes because they are not prerecorded, and that "prerecorded"

_____

exclude gaming platforms and mediums within the VPPA strongly suggests that the statute was never intended to regulate them.

modifies both "video cassette tapes" and "similar audiovisual materials"); *Osheske v. Silver Cinemas Acquisition Co.*, 700 F. Supp. 3d 921 (C.D. Cal. 2023) (holding that selling, renting, and even "delivering" audiovisual content requires a transfer of a possessory interest in such content necessary for a business to qualify as a "video tape service provider"). The games and tutorials offered on DK Casino plainly do not share those characteristics.

It is unclear from the Complaint exactly what, if any, "prerecorded audiovisual clips" Plaintiff alleges are in DraftKings' casino games. Reading his Complaint most favorably, as DraftKings must, DraftKings assumes Plaintiff refers to the animations referred to in Figures 1 and 2, which merely purport to show the game animations on the homepage of a casino game called "Wolf it Up." Compl. ¶ 34, Figures 1-2. Figures 1 and 2 do not show or describe any "cut clips" or "prerecorded" content associated with the game, nor do they show any prerecorded content similar to a cassette tape that would identify a person's video viewing preferences or history. They simply purport to show minor animations accompanying and illustrating an *interactive* online Casino game, which is not a similar characteristic to prerecorded video cassette tapes. Compl., Figures 1–4. Interactive games without "prerecorded" content, are not covered by the VPPA, and Plaintiff's claim thus fails as a matter of law. *Mendoza*, 2024 WL 2316544, at *3; *Louth*, 2022 WL 4130866, at *4.

Further, Plaintiff does not—and cannot—allege that DraftKings' consumers obtain any possessory interest in these interactive games or their accompanying animations. Unlike a rented or purchased video, the Complaint does not allege that consumers can download, store, or obtain a fixed copy of these casino games. Rather, consumers engage in interactive gameplay, dynamically participating in real-time digital environments. This form of access to these games and animations is inherently different from purchasing or renting prerecorded or physical media, as they are not

(and are not alleged to be) recorded or saved for later viewing or play beyond the real-time participation on DK Casino. This is a key distinction between platforms that offer real-time and/or interactive video games (such as DraftKings), and platforms that offer streaming of movies and video clips that can be rented, purchased and rewatched. *See Aldana*, 2024 WL 708589, at *6. Indeed, no reported case has extended the VPPA to online games in the manner Plaintiff's complaint demands.

Plaintiff fails to allege how DraftKings' Casino games fall within VPPA's scope and fails to allege that they have any characteristics similar to a video cassette tape. Indeed, the fact that the games on DK Casino cannot be possessed by customers presents a problem that cannot be cured by repleading, and warrants dismissal with prejudice.

### D. Plaintiff Fails To Allege That Personally Identifying Information Was Actually Disclosed.

Even ignoring the myriad other issues with his Complaint, Plaintiff fails to identify what PII was actually disclosed by DraftKings, and thus cannot establish the second element required to prove a claim for violation of the VPPA. At best, Plaintiff alleges that the alleged transmission of cookies containing his Facebook ID constitutes PII as contemplated by the statute. But the Complaint fatally fails to contain any allegations sufficient to show that Plaintiff's Facebook ID would allow an ordinary person to identify him. His Complaint is thus insufficient to plead a VPPA violation.

Courts in this District have endorsed the view that PII only refers to "the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 91 (S.D.N.Y. 2022) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 282-83, 290 (3d Cir. 2016)); *see also Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK) (KHP), 2017 WL

16

3727230, at *8 (S.D.N.Y. Aug. 11, 2017) ("Congress sought 'to prevent disclosures of information that would, with little or no extra effort, permit an ordinary recipient to identify a particular person's video-watching habits."), *report and recommendation adopted, Bernardino v. Barnes & Noble Booksellers, Inc.,* No. 17-CV-4570 (LAK), 2017 WL 3726050, at *1 (S.D.N.Y. Aug. 28, 2017). "The classic example [of PII under the VPPA] will always be a video clerk leaking an individual customer's video rental history. Every step away from that 1988 paradigm will make it harder for a plaintiff to make out a successful claim." *In re Nickelodeon Consumer Privacy Litig.,* 827 F.3d at 290.

Additionally, the court in *In re Nickelodeon Consumer Privacy Litigation* found that digital identifiers found in advertising cookies did *not* qualify as personally identifiable information, as they would likely be of little help in trying to identify an actual person. *Id.* at 267 ("We also hold that the Act's prohibition on the disclosure of personally identifiable information applies only to the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior. In our view, the kinds of disclosures at issue here, involving digital identifiers like IP addresses, fall outside the Act's protections.")

Here, Plaintiff's theory hinges on the alleged transmission of cookies which contain a string of numbers that make up the visitors Facebook ID. *See* Compl., ¶¶ 30, 32. Courts analyzing this issue—including in the Second Circuit—have repeatedly held that a Facebook ID alone does not constitute PII under the VPPA unless it *directly* leads to a publicly available profile that contains identifying information. *See, e.g.*, *Solomon v. Flipps Media, Inc.*, No. 22-cv-05508 (JMA), 2023 WL 6390055, at *3 (E.D.N.Y. 2023), *appeal filed,* No. 23- 7597 (2d Cir. Nov. 1, 2023) (dismissing Plaintiff's VPPA claim and explaining that "Plaintiff needed to allege that her public Facebook profile page contained identifying information about her in order to state a plausible claim. As her

complaint says nothing about any personal information on her public Facebook profile page, her VPPA claim fails."); *Ghanaat v. Numerade Labs*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) (holding that disclosure of a Facebook ID is not PII unless "it leads to a Facebook page that discloses personal and identifying information about the consumer."); *Smith v. Trinity Broad. of Texas, Inc.*, No. 8:24-CV-01046-JVS-ADS, 2024 WL 4394557, at *3 (C.D. Cal. Sept. 27, 2024)) (dismissing plaintiff's VPPA claim because the plaintiff did not "indicate that her profile [was] public and contain[ed] any identifying information or photos."); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849 (C.D. Cal. 2024) (dismissing a VPPA claim because the plaintiffs did not "identify what information on their Facebook pages, if any, was viewable and could be used to identify them.").

Even assuming Plaintiff's Facebook ID was obtained and disclosed to third parties, his allegations are woefully deficient to state a claim. Notably, Plaintiff does not allege that his Facebook profile is public or that, if it is public, that his public profile contains any of his personal or identifying information (including his real name). The latter is plainly required to support his claim. Plaintiff's suggestion that "[a]ny ordinary person who comes into possession of a Facebook ID can easily use that information to identify a particular individual and their corresponding Facebook profile" is unsupported by any case law and strains credulity, because it is highly unlikely that a digital code in a cookie file would be of any help to the average person in trying to identify another individual, as is required to state a claim under the VPPA. *See* Compl. ¶ 32; *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d at 283.

In short, Plaintiff's allegations are based on a series of hypothetical and unsubstantiated scenarios that do not plausibly demonstrate that his identity was disclosed by DraftKings to Facebook or any other third party. His VPPA claim therefore must be dismissed.

18

**E.**    **Plaintiff Fails To Show That Specific Video Content Was Disclosed from the Facebook Pixel.**

Even if the animations used in games on DK Casino contained the type of video content contemplated by the VPPA – and they do not – Plaintiff's claim is still insufficient to satisfy the statute. Plaintiff has failed to meet his burden of pleading which, if any, specific video materials he viewed were allegedly obtained and transmitted to a third party. His claim that the games he played or viewed were allegedly obtained and transmitted falls far short of identifying any alleged video material *within* those games.

The VPPA requires that the disclosed information specifically identify the 'video materials' a particular person requested or obtained.[7]  18 U.S.C. § 2710(a)(3). Plaintiff fails to sufficiently plead such a disclosure in connection with the casino game content. Figures 1 and 2 in the Complaint purport to identify certain games offered on DK Casino. Plaintiff alleges in his Complaint that the Facebook Pixel obtained the names of those games, or the website page name. Compl., ¶¶ 28, 33-34, Figures 1-2. However, this is insufficient to state a claim because the *game* is an interactive (not prerecorded) video game that is not covered by the VPPA. *Mendoza*, 2024 WL 2316544, at *3. To the extent any "prerecorded" content was contained within those games – and again, it was not – the Complaint does not identify what that content is. Without clearing that initial bar, Plaintiff's Complaint clearly does not plausibly allege or identify any specific prerecorded video content that was actually requested or obtained by a particular person, as required to state a VPPA claim. *See* 18 U.S.C. § 2710(a)(3).

Additionally, when a webpage contains multiple videos, clips, or other content, the disclosure must indicate which specific video materials were accessed by the visitor—if any. It

---

[7] Plaintiff alleges that DraftKings transmits "Personal Viewing Information," but never defines what that phrase means. Compl. ¶ 23.

must also clarify whether the visitor actually requested or obtained a video or clip, or if they simply played a game or read an article on the webpage. *See Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023) (holding that disclosure of a URL for a webpage with video and non-video content does not identify a person as having requested or obtained specific video materials because a person may have "merely reviewed an article" and done nothing more).

With regard to the tutorial content in Figures 3 and 4 of the Complaint, the screenshots merely show a webpage with written information and instructions regarding how to play Blackjack that also appears to show a small video window embedded within that page. Compl. ¶ 34, Figures 3-4. The purported video content identified in Figures 3 and 4 does not even appear to have its own distinct webpage, page name, or URL – it is simply one part of the webpage https://casino.draftkings.com/how-to-play-blackjack, which also contains non-video content. Consumers visiting the webpage may therefore read the written content on the page without ever watching the video. Even if that information were obtained and disclosed to Facebook by DraftKings, it would not even be clear if the person associated with the Facebook ID was a consumer of the video media. There is therefore no violation of the statute, and no risk of the realization of Congress's concern that third parties could misuse or divulge individuals' viewing preferences and histories. *Martin,* 657 F. Supp. 3d at 285; *see also* S. REP. 100-599, at 5.

## II.    The Complaint Should Be Dismissed With Prejudice.

Even if Plaintiff were to amend the complaint to allege specific video content watched on DraftKings' website, the fundamental deficiencies of his claim would remain. The affliction is incurable: DraftKings is not a video tape service provider under the VPPA; and the content at issue incidental to DraftKings' business and is not "prerecorded" audiovisual material covered by the statute. Plaintiff's claim, fatally defective from inception, cannot be revived by amendment. *Cantu v. Sunrun Inc.*, No. 23-CV-974-JO-AHG, 2023 WL 11795670, at *3 (S.D. Cal. Nov. 22, 2023)

(dismissing VPPA claim with prejudice where defendant's videos were incidental to its core business).

## **CONCLUSION**

For the foregoing reasons, DraftKings respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice.

DATED:  New York, New York
         February 21, 2025

By:        */s  James Sandnes*
           James T. Sandnes
           SKARZYNSKI MARICK & BLACK LLP
           One Battery Park Plaza, 32nd Floor
           New York, NY 10004
           Telephone: (212) 820-7700
           Email: jsandnes@skarzynski.com

           Richard R. Patch (pro hac vice forthcoming)
           Scott C. Hall (pro hac vice forthcoming)
           Mari S. Clifford (pro hac vice forthcoming)
           COBLENTZ PATCH DUFFY & BASS LLP
           One Montgomery Street, Suite 3000
           San Francisco, CA 94104-5500
           Telephone: (415) 391-4800
           Facsmile: (415) 989-1663
           Email: ef-rrp@cpdb.com
                  ef-sch@cpdb.com
                  ef-msc@cpdb.com

4918-0683-0622, v. 2

21